IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 5, 2011

## ANTONIO BONDS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-08055     John T. Fowlkes, Jr., Judge**

---

**No. W2010-01515-CCA-R3-PC   -   Filed March 16, 2011**

---

The petitioner, Antonio Bonds, appeals the trial court's denial of his petition for post-conviction relief as time-barred.  The petitioner asserts that he is entitled to a tolling of the post-conviction statute of limitations. We have reviewed the record and the parties' briefs. Because the facts of this case do not warrant a tolling of the statute of limitations, we affirm the decision of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Antonio Bonds, pro se, Whiteville, Tennessee.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Garland Erguden, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

On September 30, 2000, following a jury trial, a jury convicted the petitioner of the first degree murder of David Stewart, and the trial court sentenced him to life imprisonment. On appeal, this court affirmed the petitioner's conviction. *See State v. Antonio Bonds*, No. W2000-01242-CCA-R3-CD, 2001 WL 912829, at *1 (Tenn. Crim. App., at Jackson, Aug. 13, 2001).  The following is a summary of the facts of the case taken from this court's opinion on direct appeal:

On January 15, 1998, the body of the twenty-year-old victim, David Stewart, was found in a vacant parking lot near Humes High School in Memphis by two employees of Memphis Light, Gas and Water. An autopsy revealed that the cause of death was multiple gunshot wounds, with the most significant injuries being to the brain, lungs, and a blood vessel in the neck.

When the [petitioner] was eleven years old, he dated Tamekia Mosley for a period of approximately two years. During this period, Mosley, the victim and the [petitioner] were all close friends. The relationship between the [petitioner] and Mosley, however, ended in 1992 or 1993. After the break-up, the victim and the [petitioner] remained friends but neither had any further contact with Mosley.

Several years later, in December of 1997, Mosley contacted the victim and requested that he reunite her with the [petitioner]. The victim complied and the relationship between the [petitioner] and Mosley renewed. Unbeknownst to Mosley, however, the [petitioner] was also dating Jennifer Tyler, the mother of his two-year-old daughter. After Tyler learned of the [petitioner]'s renewed relationship with Mosley, "numerous telephone [and confrontational] conversations" occurred between the two. The proof established that Mosley's telephone number was given to Tyler by the victim.

On January 13, 1998, Tyler attempted to enter the [petitioner]'s apartment but was refused entry by the [petitioner] because Mosley was inside. On this occasion, Tyler engaged the [petitioner] in a discussion over Mosley's presence at the apartment and was overheard telling the [petitioner] to "tell the bitch to come outside."

On January 14, 1998, Mosley spent the night with the [petitioner]. As she was leaving the next day, on January 15, 1998, she found a message written in lipstick on her car which said, "Go away whoever; I'm watching you." Mosley went back inside, told the [petitioner] what she found, and they walked outside together to look at her vehicle. Upon seeing the message, the [petitioner] became angry and stated, "I'm going to get that boy." Mosley told the [petitioner] that it was not the victim's fault that Tyler wrote on her car, but the [petitioner] insisted that the victim "talked too much" and must have told Tyler what Mosley's car looked like in order for Tyler to know which vehicle to leave the message on. The [petitioner] immediately put his daughter in his car and told Mosley that he was going to get the child some food.

-2-

About two hours later, Mosley received a call from the [petitioner] who said, "you don't have to worry about [the victim] anymore." When she asked what he meant, he said he had to go. Later that night, the [petitioner] again called Mosley. This time the [petitioner] explained that he had gone by the victim's house, picked him up, and drove around for some time questioning the victim about what he had told Tyler. The [petitioner] further stated that he shot and killed the victim in a vacant parking lot near Humes High School. The [petitioner] told Mosley that the victim "talked too much" and that he blamed the victim for their prior breakup in 1993.

Later that same evening, the [petitioner] stopped by Tyler's house with their daughter. Their daughter grabbed a piece of chair shaped like a gun and pointed it at Tyler saying, "pow-pow." The [petitioner] said, "your boy is gone" and explained to Tyler that he had gone by the victim's house earlier that day, grabbed him and shot him near Humes High School. He further explained that the victim felt nothing initially, so he kept shooting. Later, when Tyler was visiting the [petitioner] in jail, he again stated, "your boy is gone." At trial, Tyler admitted to being the person who wrote on Mosley's car and verified that the victim did, in fact, tell her the make and model of Mosley's vehicle. She explained that she was angry because several days prior to the incident the [petitioner] told her that he and Mosley were not dating.

*Id*. at *1-2.

Based upon this evidence, a Shelby County jury convicted the petitioner of first degree murder, and the trial court sentenced him to life imprisonment. On August 13, 2001, this court affirmed the judgment of the trial court. *See id*. at *1. The Tennessee Supreme Court denied permission to appeal on December 27, 2001. The petitioner filed a petition to re-hear, which the state supreme court denied on February 11, 2002. The mandate was issued on February 12, 2002. On January 10, 2003, the petitioner filed a petition for post-conviction relief. The post-conviction court dismissed the petition for post-conviction relief as untimely because it was not filed within one year of the state supreme court's denial of the application for permission to appeal. On November 14, 2003, a panel of this court affirmed the dismissal of the petition for post-conviction relief, holding that for purposes of the post-conviction statute of limitations, the final action of the Tennessee Supreme Court was the date of its denial of the application for permission to appeal, rather than the date it denied the petition to rehear. *See Antonio Bonds v. State*, W2003-00260-CCA-R3-PC, 2003 WL 22718186 at *1 (Tenn. Crim. App., at Jackson, Nov. 14, 2003).

On March, 26, 2010, the petitioner filed a second petition for post-conviction relief, in which he asserted for the first time that he was entitled to a tolling of the statute of limitations because the clerk at the department of correction had failed to copy and mail his petition for post-conviction relief in a timely manner. The trial court denied the petition for post-conviction relief on May 21, 2010. The petitioner appealed.

**Analysis**

The petitioner contends that the statute of limitations on his post-conviction petition should be tolled due to extraordinary circumstances beyond his control. Specifically, the petitioner avers that the clerk at the Tennessee Department of Correction failed to copy and mail his petition for post-conviction relief in a timely manner. According to the petitioner's brief, on December 23, 2002, the petitioner requested copies for his original post-conviction filing. However, despite several requests, the necessary copies were not returned to him until January 7, 2003. Petitioner then filed the petition for post-conviction relief on January 10, 2003. Petitioner admits in his opening brief that "[p]etitioner offers no explanation for his failure to present this issue in either his first post-conviction petition or in the appeal of that dismissal."

In addition, the petitioner states that the statute of limitations should be tolled due to a miscarriage of justice and claim of actual innocence. According to the petitioner, he did not receive his visitation record until September 22, 2005. The petitioner submits that the visitation record establishes his innocence because it shows that the visitation confession between the petitioner and Jennifer Perry Tyler, witness for the state, did not take place. In his brief, the petitioner also states that he did not receive the arrest record of Ms. Perry until September 20, 2004. Ms. Perry's arrest record reveals that she was arrested fourteen days before testifying against the petitioner and after testifying, the charges were dismissed.

Pursuant to Tennessee Code Annotated § 40-30-102(a), a person must petition for post-conviction relief within one year of the date of the final action of the highest state appellate court to which they take an appeal or, if they take no appeal, within one year of the date on which the judgment becomes final. The statute further provides that:

> The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise.

Tenn. Code Ann. § 40-30-102(a). However, despite the one-year statute of limitations, a post-conviction court may still consider an untimely petition if: (1) the highest state appellate court or the United States Supreme Court established a new constitutional right with retrospective application, (2) new scientific evidence has established the petitioner's innocence, or (3) a court has ruled that a previous conviction that enhanced the petitioner's sentence was invalid. *Id*. at § 40-30-102(b).

A court may also consider an untimely petition if applying the statute of limitations would deny the petitioner due process. *Burford v. State*, 845 S.W.2d 204, 209-10 (Tenn. 1992). To determine if due process requires tolling of the statute of limitations, a court must: "(1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are 'later-arising,' determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim." *Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995). Due process requires a weighing of the petitioner's liberty interest against the state's interest in preventing the litigation of stale and fraudulent claims. *Id*.

In the present case, the Tennessee Supreme Court denied permission to appeal on December 27, 2001. When the state supreme court, the highest state appellate court to which the petitioner appealed, denied permission to appeal, the statute of limitations for filing a petition for post-conviction relief began to run. Therefore, the petition for post-conviction relief, which was filed on January 10, 2003, was untimely barred by the statute of limitations. In his March 26, 2010 petition for post-conviction relief, the petitioner argued for the first time that the statute of limitations should be tolled because the clerk at the department of correction failed to copy and mail his original petition for post-conviction relief in a timely manner. "[I]t is incumbent upon a petitioner to include allegations of fact in the petition establishing either timely filing or tolling of the statutory period." *State v. Nix*, 40 S.W.3d 459, 464 (citing Tenn. Code Ann.§ 40-30-204(e)). "Failure to include sufficient factual allegations of either compliance with the statute or incompetence requiring tolling will result in dismissal." *Id*. (citing Tenn. Code Ann.§ 40-30-206(b)).

The petitioner has not provided any facts which raise a due process concern. *See*, *e.g.*, *Williams v. State*, 44 S.W.3d 464 (Tenn. 2001) (holding that strict application of the statute of limitations to cases in which a petitioner has been unilaterally deprived of the opportunity to seek second-tier review of his convictions through misrepresentations of his attorney may violate due process); *Seals v. State*, 23 S.W.3d 272, 279 (Tenn. 2000) (holding that the statute of limitations should be tolled during the time that petitioner was mentally impaired). We have previously held that the post-conviction statute of limitation does not include a discovery exception which would toll its one-year limit. *James Marvin Martin v. State*, No.

E2004-00740-CCA-R3-PC, 2004 WL 2280425, at *3 (Tenn. Crim. App., at Knoxville, Oct. 11, 2004), *perm. app. denied* (Tenn. Feb. 28, 2005). Further, we have previously determined that mere lack of knowledge that a claim exists does not toll the statute of limitations. *See, e.g., Jason Earl Hill v. State*, No. E2005-00968-CCA-R3-PC, 2006 WL 389667 (Tenn. Crim. App. at Knoxville, Feb. 16, 2006), *perm. app. denied* (Tenn. Sept. 5, 2006) (concluding that petitioner's lack of knowledge does not toll the statute of limitations when petitioner argued that he did not discover his claim for relief until the conviction was used to enhance a subsequent federal sentence); *Guillermo Matiaz Juan v. State*, No. 03C01-9708-CR-00318, 1999 WL 76453 (Tenn. Crim. App. Feb. 18, 1999), *perm. app. denied* (Tenn. July 12, 1999) (determining that ignorance of the law did not bar application of the post-conviction statute of limitations). Because no exceptions apply that would toll the statute of limitations, the post-conviction court properly dismissed the petitioner's petition for post-conviction relief as time-barred.

## Conclusion

The facts of the petitioner's case do not indicate that the petitioner was denied the reasonable opportunity to assert a post-conviction claim in a meaningful time and manner. Therefore, the application of the post-conviction statute of limitations in this case does not violate the petitioner's due process rights. The petition is time barred, and the judgment of the post-conviction court is affirmed.

_____
J.C. McLIN, JUDGE